# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| NATHAN T. PAYNE and MALINDA A. PAYNE, | CASE NO. 3:09-cv-00080 |
| *Plaintiffs,* | |
| v. | MEMORANDUM OPINION |
| BANK OF AMERICA, N.A., SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and SAMUEL I. WHITE, P.C. | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court upon Plaintiffs' Motion to Remand, filed December 29, 2009 (docket no. 6), and Defendant Bank of America, N.A.'s Brief in Opposition to Plaintiffs' Motion to Remand, filed January 26, 2010 (docket no. 13). For the following reasons, Plaintiffs' Motion to Remand will be GRANTED, in a separate Order to follow.

## I. BACKGROUND

This case arises from an allegedly unlawful course of conduct by Defendant Bank of America, N.A. (Bank of America), which allegedly had the effect of causing Plaintiffs Nathan T. Payne and Malida A. Payne (Plaintiffs) to lose their residence located at 2834 Shiloh Church Road, Palmyra, Virginia (the Property) at foreclosure. According to the allegations in the Complaint, Plaintiffs refinanced the Property in conjunction with the construction of an addition to the house, borrowing $192,850.00 on a thirty year fixed rate note with an interest rate of 7.375 percent (the Loan) and executing a Deed of Trust conveying the Property to Trust Title Services, Inc., as trustee,

to secure repayment. Beginning on September 1, 2007, Plaintiffs began making monthly payments to the lender in the amount of $1,502.08, but missed three such payments (in January 2008, April 2008 and February 2009) due to economic stresses. The Loan and Deed of Trust were subsequently assigned to a subsidiary of Bank of America.

Thereafter, Plaintiffs made their first monthly payment to Bank of America on July 1, 2009, which required payment in the significantly increased amount of $1,897.00. Two months later, on September 15, 2009, Plaintiffs received a Notice of Trustee's Sale of the Property from Reconstruct Company, N.A. and Samuel I. White, P.C. (SIWPC) as substitute trustees, stating that the Property would be sold at foreclosure on September 30, 2009 at 11:00 a.m. Thereafter, Plaintiffs allege that they made many efforts to contact both Bank of America and SIWPC in order to ensure that the Property was not sold at foreclosure. Plaintiffs sought information on whether a loan modification would be available, and allege that they reached an agreement with Bank of America to accomplish that end. Further, Plaintiffs sought information necessary from Bank of America and SIWPC so they could reinstate their loan under the terms of the Deed of Trust. All was to no avail. On October 7, 2009, Plaintiffs received a Notice to vacate from SIWPC, as substitute trustee, advising that the Property had been sold at public auction on September 30, 2009, and notifying that they had five days to vacate the Property.

Plaintiffs filed a Complaint in the Circuit Court for Fluvanna County on October 28, 2009, against Bank of America, SIWPC as substitute trustee of the Property, and the Secretary of the U.S. Department of Housing and Urban Development as the alleged purchaser of the Property (HUD), bringing claims of actual or constructive fraud, breach of contract, estoppel in pais, and seeking a temporary and permanent injunction to prevent the defendants from taking any steps to dispossess Plaintiffs of the Property before an adjudication on the merits. This last count in the Complaint

specifically references an action that had been brought by HUD and SIWPC against Plaintiffs for unlawful detainer. *See Secretary of Housing and Urban Development of Washington, D.C. v. Nathan T. Payne*, Case No. GV09000326-00 (General District Court of Fluvanna County, Virginia) (Unlawful Detainer Action).

On December 4, 2009, Defendant Bank of America filed a Notice of Removal (docket no. 1), which alleges that HUD and SIWPC were nominal parties and/or fraudulently joined, and that removal was proper on the basis of diversity jurisdiction. Attached to the Notice of Removal was a letter from SIWPC to the Fluvanna County General District Court, dated November 11, 2009, nonsuiting the Unlawful Detainer Action. *See* Notice of Removal, Exhibit C. Subsequently, HUD filed a document entitled "Disclaimer of Defendant Secretary of the U.S. Department of Housing and Urban Development" (docket no. 7), which asserts that HUD "does not have an interest in the subject property" and that "the United States of America disclaims any further interest in the real estate herein and the proceedings in this action." On December 29, 2009, Plaintiffs filed the instant Motion to Remand (docket no. 6), and on January 26, 2010, Bank of America filed its Brief in Opposition to Plaintiffs' Motion to Remand (docket no. 13).

## II. APPLICABLE LAW

### A. Removal Jurisdiction

The procedure for removing cases from state to federal court provides, in pertinent part, that "[a] defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal." 28 U.S.C. § 1446(a). It is well established that the removal statutes are to be strictly construed because removal constitutes an infringement of state sovereignty. *See Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005); *Creed v. Virginia*, 596 F.Supp.2d 930, 933-34

(E.D. Va. 2009). As a result, "doubts regarding compliance with removal provisions must be resolved in favor of remanding the case to state court." *Bellone v. Roxbury Homes, Inc.*, 748 F.Supp. 434, 436 (W.D. Va. 1990). *See also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999). It is also well established that "[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008); *see also Galen-Med, Inc. v. Owens*, 41 F.Supp.2d 611, 612-13 (W.D. Va. 1999).

The statutes only permit removal where "the district courts of the United States have original jurisdiction" over the claim, 28 U.S.C. § 1441(a), meaning the Court must determine "whether [this] claim could have been brought originally in federal district court." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003). A claim generally must arise under federal law, invoke diversity jurisdiction, or fall under the "rare" set of claims that are completely preempted by federal law, in order for removal to be appropriate. *Lontz*, 413 F.3d at 439-40. Neither party argues that there is a federal question or complete preemption issue. Instead, Bank of America alleges that the claim could have been filed originally in this Court on the basis of diversity jurisdiction, and on that ground, removal was proper. *See* Notice of Removal, at ¶ 5.

Diversity jurisdiction in civil actions requires there to be more than $75,000 in controversy and complete diversity between the parties, *i.e.*, the state of citizenship of each plaintiff must be different from that of each defendant. 28 U.S.C. § 1332(a); *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). In particular, "[t]his 'complete diversity' rule, when coupled with other rules, makes it difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit prior to removal." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). However, where the requirements for diversity jurisdiction are met and no defendant is a citizen of

the state in which the suit was brought, the case properly removable to federal court. *See* 28 U.S.C. §

1441(b); *see also Lontz*, 413 F.3d at 439 ("Since diversity always vests original jurisdiction in the

district courts, diversity also generates removal jurisdiction."); *Peterson v. Cooley*, 142 F.3d 181,

184 (4th Cir. 1998).

### B.  Fraudulent or Improper Joinder

In the Court's inquiry into diversity jurisdiction, parties that are "fraudulently joined" are to

be disregarded, and only "real parties to the controversy" are relevant. *See Mayes*, 198 F.3d at 461;

*Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 334-35 (4th Cir. 2007); *see also* 77 C.J.S. *Removal of*

*Cases* § 86.

The term "fraudulent joinder" is, in many ways, a misnomer, as it requires neither fraud nor

joinder. *See Mayes*, 198 F.3d at 461 n.8.  It is more accurately characterized as "a term of art [which]

does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court

finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of

action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003

(4th Cir. 1990). To establish that a nondiverse defendant has been fraudulently joined, the removing

party must establish either:

> [t]hat there is *no possibility* that the plaintiff would be able to
> establish a cause of action against the in-state defendant in state
> court; or [t]hat there has been outright fraud in the plaintiff's pleading
> of jurisdictional facts.

*Baltimore County v. Cigna Healthcare*, 238 F. App'x 914, 920 (4th Cir. 2007) (citing *Mayes*, 198

F.3d at 464). The burden on Bank of America in claiming fraudulent joinder is heavy. *See Mayes*,

198 F.3d at 464 (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993)).

Bank of America does not allege that Plaintiffs engaged in "outright fraud." Instead, it

contends that "there is no possibility that either HUD or SIWPC could be held liable to Plaintiffs,"

and as a result, they are "nominal parties, fraudulently joined to destroy diversity." Bank of America's Memorandum in Opposition, at 2-3. The Court must resolve all issues of fact and law in Plaintiffs' favor when determining whether there is "no possibility that the plaintiff would be able to establish a cause of action" against HUD or SIWPC. *Mayes*, 198 F.3d at 464. Furthermore, this standard is recognized to be "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (citing *Hartley*, 187 F.3d at 424). Finally, in the Court's inquiry into fraudulent joinder, it "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (citing *AIDS Counseling and Testing Centers*, 903 F.2d at 1004).

### C. Nominal or Formal Parties

In a related but not identical doctrine, in the Court's inquiry into diversity jurisdiction, "nominal" or "formal" parties that have been joined are to be disregarded and only "real parties to the controversy" are considered relevant. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61, 100 S.Ct. 1779 (1980); *see also* 77 C.J.S. *Removal of Cases* § 89.

The Fourth Circuit has not provided a standard against which courts can determine what constitutes a "nominal party" for removal purposes. *See Creed*, 596 F.Supp.2d at 934 (citing *Allen v. Monsanto Co.*, 396 F.Supp.2d 728, 732 (S.D.W.Va. 2005)). For example, in determining whether a party is "nominal," the Fifth Circuit standard mirrors the fraudulent joinder standard above: namely, whether there is "no possibility" that the plaintiff could establish a cause of action against it in state court. *See Farias v. Bexar City Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991). Courts within this Circuit have asked whether there is any "legal possibility for predicting" that the party could be found liable. *See Creed*, 596 F.Supp.2d at 935 (citing *Allen*, 396 F.Supp.2d at 733). Courts within this Circuit have also asked "whether a court

would be able to enter a final judgment favoring the plaintiff in the absence of the purportedly nominal defendant without materially affecting the relief due to the plaintiff." *Creed*, 596 F.Supp.2d at 935; *see also Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 696 (M.D.N.C. 2007).

Bank of America, as the removing party, bears the burden of establishing that HUD and SIWPC are "formal" or "nominal" parties whose citizenship can be ignored for diversity purposes. *See Creed*, 596 F.Supp.2d at 934; *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 389 (S.D.N.Y. 2006) (same).

### III. POSSIBLE RECOVERY AGAINST NONDIVERSE DEFENDANTS

Bank of America raises several arguments supporting its contention that HUD and SIWPC were fraudulently joined by Plaintiffs to defeat diversity jurisdiction. Principally, Bank of America argues that "there is no legal possibility that [HUD and SIWPC] could be held liable to Plaintiffs or that Plaintiffs could establish a cause of action against them," because "[n]ot a single cause of action in Plaintiffs' Complaint is asserted against HUD or SIWPC." Bank of America's Memorandum in Opposition, at 6. In Count One of the Complaint ("Actual and/or Constructive Fraud"), Plaintiffs seek from the Court an Order "[a]warding them a judgment against Bank of America for actual and/or constructive fraud." Complaint, at ¶¶ 34 – 37. In Counts Two and Three of the Complaint ("Breach of Contract"), Plaintiffs seek from the Court an Order "[s]etting aside the foreclosure sale as a result of Bank of America's breach of contract," or alternatively, an Order "[a]warding them $100,000.00 or such other amount as they may prove at trial in damages." Complaint, at ¶¶ 38 – 47. In Count Four of the Complaint ("Estoppel In Pais"), Plaintiffs seek from the Court an Order "[h]olding that Bank of America is estopped by its own conduct to foreclose on the Property." Complaint, at ¶¶ 48 – 51.

In response, Plaintiffs argue that as to each of these claims in their Complaint, they request

that the foreclosure sale be set aside and the property be re-titled in their name. *See* Complaint, at ¶¶

37, 42, 47, 51. This relief, they allege, "can simply not be fully granted, based upon the facts

currently before the Court, without both HUD and [SIWPC] being parties to this case." The pertinent

facts supporting this contention are: (1) SIWPC, as one of the substitute trustees under the Deed of

Trust, conducted the foreclosure sale on September 30, 2009; (2) HUD, upon information and belief,

bought the Property at the sale; (3) SIWPC and HUD were plaintiffs in the Unlawful Detainer

Action; and (4) to date, there have been no deeds recorded from SIWPC conveying the Property to

HUD or any other entity. *See* Plaintiffs' Motion to Remand, at 5.

Under these circumstances, the Court finds that Bank of America has not met its burden of

showing that diversity jurisdiction exists and thus, removal was proper. *See Ellenburg*, 519 F.3d at

200 (burden to show jurisdiction on removing party); *Mayes*, 198 F.3d at 464 (heavy burden on

party claiming fraudulent joinder); *Creed*, 596 F.Supp.2d at 934 (burden on party alleging existence

of a "nominal" or "formal" party).

As a preliminary matter, it appears that the Court would be impaired in its ability to enter a

final judgment that favors Plaintiffs, and grant the relief specifically requested (namely that the

foreclosure sale be set aside and the Property be re-titled in their name), if SIWPC as the substitute

trustee was not a party. *See Mako*, 472 F.Supp.2d at 696. Based upon the factual assertions of the

parties,[1] the Court must assume that SIWPC has not yet recorded a deed conveying the Property to

any other entity, and thus, "retains legal title to the property until the deed is delivered." *Sovran*

---

[1] Plaintiffs allege that to date, no deed has been recorded conveying the Property from SIWPC, as the substitute trustee, to HUD or any other entity. *See* Plaintiffs' Motion to Remand, at 5. In response, Bank of America has merely alleged that SIWPC has no interest in the "outcome" of the case. *See* Bank of America's Memorandum in Opposition, at 2, 11. However, neither Bank of America nor SIWPC has denied that SIWPC still acts in its capacity as substitute trustee, nor disclaimed legal title to the subject Property. Furthermore, neither has contested Plaintiffs' allegation that no deed has been recorded conveying the Property from SIWPC to any other entity.

*Bank v. Creative Indus.*, 425 S.E.2d 504, 505 n.2 (Va. 1993); *see also Ryland Group, Inc. v. Wills*, 331 S.E.2d 399, 403 (Va. 1985) ("We also agree that vesting of legal title is postponed until delivery of the deed at settlement."). Under similar circumstances, a trustee under a deed of trust was held to be "a necessary party to the suit seeking enforcement [of two mechanic's liens] by judicial sale [of subject property] because, absent jurisdiction over his person, the chancellor could not enter a decree divesting him of legal title to the property." *George W. Kane, Inc. v. Nuscope, Inc.*, 416 S.E.2d 701, 703 (Va. 1992) (citing *Walt Robbins, Inc. v. Damon Corp.*, 348 S.E.2d 223, 227 (Va. 1986)); *cf. Clasbey v. Clasbey*, No. CH90000283R, 1992 WL 898114, at *4 (Va. Cir. Ct. 1992) (stating that "the trustee(s) … of a deed of trust secured by real property are necessary parties to a suit for partition of the real estate" (citing *Conrad v. Fuller*, 34 S.E. 893 (1900))).

Plaintiffs seek from the Court an Order setting aside the foreclosure sale and re-titling the Property in their name. As the Court must assume that SIWPC still holds legal title to the Property based upon the factual allegations of the parties, and as the relief requested would have the effect of depriving SIWPC as the substitute trustee of legal title to the Property, it appears that the Court would be unable to enter judgment in favor of Plaintiffs and grant the relief specifically requested. Therefore, Bank of America has not met its burden of establishing that SIWPC was fraudulently joined or is a "nominal" or "formal" party to this litigation.

However, even if the substitute trustee need not remain a party to this action in order to afford complete relief to Plaintiffs, Bank of America still has not met its burden of proving that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," *Cigna Healthcare*, 238 F. App'x at 920 (fraudulent joinder), or that there is no "legal possibility for predicting" that the party could be found to be liable. *See Creed*, 596

F.Supp.2d at 935 (nominal party). Bank of America relies heavily upon *Dempsey v. Transouth Mort. Corp.*, 88 F.Supp.2d 482 (W.D.N.C. 1999), in support of its contention that SIWPC is merely a "nominal party." In *Dempsey*, the court was confronted with a roughly similar procedural posture, wherein the plaintiffs had filed suit in state court against their mortgage company (a diverse party) and the substitute trustee (a non-diverse party). When the defendant mortgage company removed to federal court on the basis of diversity jurisdiction and the plaintiffs moved to remand, the court held that the substitute trustee was "clearly a nominal party at best" that "may have been joined as a defendant solely to defeat diversity jurisdiction." *Dempsey*, 88 F.Supp.2d at 484.

A crucial difference between the cases is that in *Dempsey*, "[t]he complaint containe[d] no allegations concerning [the substitute trustee] beyond the allegation of its citizenship." *Id*. at 484. In determining that the substitute trustee was a nominal party, the court focused on this, stating that "[t]he complaint contains no factual allegations against [the substitute trustee]." *Id*. This stands in contrast to the present case. Plaintiffs allege that after receiving on October 7, 2009 a notice to vacate from SIWPC advising them that the Property had been sold at a public auction, Mrs. Payne "telephoned [SIWPC's] office and spoke with Anna Robertus, who advised that she would send Bank of America an email to check on the reinstatement." Complaint, at ¶ 25. On October 8, 2009, it is alleged that a representative of Bank of America told Mrs. Payne that they would give SIWPC's office a call to check on the reinstatement figures. Complaint, at ¶ 26. That same day, it is alleged that Mrs. Payne spoke with Anna in SIWPC's office, "who said she had not gotten any response from Bank of America and requested Mrs. Payne to call back at 4:00 PM that day. When [Mrs. Payne] called back, Anna was not available." Complaint, at ¶ 27. Plaintiffs allege that on October 9, 2009, in addition to calling representatives of Bank of America, again Mrs. Payne called SIWPC's office, advising that she "needed a reinstatement figure." Mrs. Payne was told that "Bank of

America had purchased the Property at the foreclosure sale, and that it would take another three to five days to obtain a reinstatement figure." Complaint, at ¶ 29. Plaintiffs further allege that "[d]espite numerous requests, neither Bank of America nor [SIWPC] ever provided the Paynes a reinstatement figure." Complaint, at ¶ 31. Plaintiffs also allege in Count Three of their Complaint that "Paragraph 10 of the Deed of Trust recorded against the Property and pursuant to which the Substitute Trustees conducted the foreclosure sale states as follows: 'Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current ….'" Complaint, at ¶ 44.

As the trustee holding the deed of trust to the property burdened by the debt at issue, the role of SIWPC as substitute trustee is clearly circumscribed by Virginia law. The powers and duties of SIWPC, as substitute trustee, "are limited and defined by the instrument under which [it] acts," meaning the Deed of Trust to the Property. *Powell v. Adams*, 18 S.E.2d 261, 262-63 (Va. 1942). "The general rule concerning the position of a trustee under a deed of trust is that the trustee is a fiduciary for both debtor and creditor and must act impartially between them." *Whitlow v. Mountain Trust Bank*, 207 S.E.2d 837, 840 (Va. 1974); *see also Preston v. Johnson*, 53 S.E. 1 (Va. 1906) ("It is well-settled doctrine in this jurisdiction that a trustee for sale is the agent of both debtor and creditor, and as such it is incumbent upon him to act toward each with perfect fairness and impartiality.").

Plaintiffs have alleged that neither Bank of America, nor SIWPC, provided them with necessary information (the reinstatement figure) so that they could effectuate their right to be reinstated under Paragraph 10 of the Deed of Trust. Complaint, at ¶ 31. Plaintiffs have further

alleged that Bank of America, "acting through the Substitute Trustees," Complaint, at ¶ 37, committed fraud upon Plaintiffs (Count One) and breached the terms of the Deed of Trust (Count Three). The Deed of Trust is the governing document that sets forth the duties and powers of SIWPC as the substitute trustee, and as such, SIWPC had a legal duty to act impartially toward both debtor and creditor. Given the significant factual allegations made specifically against SIWPC, as contrasted with the single allegation of citizenship in *Dempsey*, the Court finds that Bank of America has not met its burden of proving that there is no possibility that SIWPC would be found liable to Plaintiffs in state court.

As a result, Bank of America has not met its burden of proving that SIWPC was either a "nominal" or "formal" party, or was fraudulently joined to defeat diversity jurisdiction. As a result, the citizenship of SIWPC must be considered by the Court in determining whether this case was properly removed on the grounds of diversity jurisdiction. The Court recognizes that "doubts regarding compliance with removal provisions must be resolved in favor of remanding the case to state court." *Bellone*, 748 F.Supp. at 436; *see also Dixon*, 369 F.3d at 816. As there is not complete diversity between Plaintiffs and SIWPC, the Court finds that it lacks subject matter jurisdiction of this case and that it was improperly removed from state court. Therefore, in an Order to follow, this case shall be remanded to the Circuit Court for Fluvanna County.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 11th day of February, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE